IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

LINDA SEATER,                                              Case No. 1:14-cv-00953-CL

               Plaintiff,

       v.                                                      **REPORT AND**
                                          **RECOMMENDATION**

KLAMATH COUNTY, et al,

               Defendants.
_____

CLARKE, Magistrate Judge

    Plaintiff Linda Seater brings claims against the defendants alleging that she was wrongfully terminated in violation of Oregon law and her procedural due process rights under the United States Constitution.  Plaintiff originally filed her action in state court, and the defendants removed to federal court on June 12, 2014.  The case comes before the Court on defendants' motion for summary judgment (#57).  For the reasons below, this motion should be GRANTED in part, and the case should be remanded to state court for disposition of the remaining claims.

## BACKGROUND

    Plaintiff was an employee at Klamath County for more than 26 years, and served as Property Control Manager for 22 years.  In December, 2011, at a meeting of the Board of County

Commissioners, the Board made a proposal to promote Plaintiff to Tax Collector, a managerial position. Plaintiff asserts that she only accepted the promotion because the Board promised her that if the position did not work out, she could return to her position as Property Manager.

On January 10, 2012, Plaintiff was appointed to the Tax Collector position. She alleges that the promotion was viewed negatively by her coworkers, and that her attempts to improve the Tax Department caused negative reactions and retaliation by other County employees, who resented the changes. Plaintiff alleges that these County workers made flimsy claims that she was creating a hostile work environment, and the County then conducted a flawed and biased investigation for the purpose of terminating her and refusing to allow her to return to her old position.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion

for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

### I.     Defendants' motion for summary judgment should be granted as to Plaintiff's procedural due process claim under the Fourteenth Amendment.

The Plaintiff's only federal claim in her First Amended Complaint is her Sixth Claim for Relief, in which she asserts that the defendants violated her right to procedural due process under the Fourteenth Amendment to the United States Constitution.

The Fourteenth Amendment provides, "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A § 1983 claim based upon the deprivation of procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993). "The essential requirements of [a] pre-termination process are notice and an opportunity to respond." *Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir.1995).

### a.   The Court will assume that Plaintiff had a property interest in her employment.

In the employment context, to state a due process claim, a public employee must establish a "legitimate claim of entitlement" to her job; that is, she must establish that she can only be terminated "for cause." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 780 (9th Cir. 1997). Property interests are not created or defined by the federal constitution, but by "existing rules or

understandings that stem from an independent source such as state law – rules or understandings

that secure certain benefits and that support claims of entitlement to those benefits." *Board of*

*Regents v. Roth*, 408 U.S. 564, 577 (1972). As the Oregon Supreme Court noted in *Maddox v.*

*Clackamas County School District No. 25*, 293 Or. 27, 643 P.2d 1253 (1982), "[s]tate law

defines the interest, but federal constitutional law determines whether an underlying property

interest 'rises to the level' of a 'legitimate claim of entitlement' protected by the Due Process

Clause." *Maddox*, 293 Or. at 37, citing *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1,

9 (1978). At-will employees have no property interest in their employment, and can be

terminated without due process. *Lawson v. Umatilla County*, 139 F.3d 690 (91h Cir. 1998);

*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

      Defendants assert that Plaintiff was an at-will employee in both of the positions she

served with the County. Defendants base this assertion on her written agreements with the

County at various times during her service as Property Manager (Def. Exs. 102-104; dkt. # 58-2-

4), the County's employee handbook (Def. Ex. 101; dkt. #58-1), and Oregon statutory law that

provides for appointed positions, such as Tax Collector, to "serve at the pleasure" of the County

Commissioners (ORS 204.601). Plaintiff herself states that she "does not sue because she lost

her job as Tax Collector, County official serving at the pleasure of the Commissioners. . . .

Plaintiff sues because she took that job based on the Board's unanimous promise that if she did

not succeed in it – her first managerial role after nearly thirty years as a County employee – she

could return to her previous job in property sales." In other words, Plaintiff concedes that her

position as Tax Collector was at-will, but asserts that she had an entitlement to her old position

as Property Manager through the promise of the Board.

The Court agrees that Plaintiff raises an issue of fact concerning the promise by the Board that she could return to her old position as Property Manager. Plaintiff also disputes whether or not she would have returned to her previous position as an at-will employee, considering her decades of service, and her lack of any poor performance reviews in that role. Therefore, for purposes of determining due process, the Court assumes without deciding that Plaintiff had a property interest in her employment with the County.

**b. Assuming that Plaintiff had a property interest, she was given due process.**

As discussed above, it is unclear whether or not Plaintiff had a property interest in her employment with Klamath County. However, even if she did have a property interest, Plaintiff was given procedural due process as required by the Fourteenth Amendment. If a public employee has a property interest in her employment, she is "entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

**1. Plaintiff was given notice by the May 21 letter and the Executive Summary.**

The undisputed facts in the record show that on May 21, 2013 Plaintiff was given a letter informing her that a "pre-disciplinary / due process meeting" would be held on May 28, 2013. Meeting Notice 2 (dkt. #58-14). The letter stated that the Board was considering disciplining her "up to and including termination," and the purpose of the meeting was to give her "an opportunity to present information, explanations, mitigating circumstances, or other relevant evidence related to this situation." *Id.* At Plaintiff's request, the hearing was postponed until June 10, 2013.

The Executive Summary report attached to the May 21 letter stated several charges against Plaintiff, including: 1) she created operational problems and then blamed the problems on

her subordinate employees; 2) she engaged in disrespectful, demeaning and hostile behavior towards subordinate employees; 3) two subordinate employees believed that she retaliated against them because they complained to the union about their working environment; 4) other management employees viewed her as obstructionist and difficult to work with. The report then went into detail about several different issues regarding Plaintiff's management style. Based on investigator interviews with Tax Department employees, the report alleged that Plaintiff was warned in advance about the "tax rush" busy season, but she declined to prepare for the season by hiring temporary staff to help answer phones and handle demand. The report also claimed that she took down the voice mail box capability so that taxpayers could no longer leave messages due to the inundation of the office with calls. She also failed to transition the Tax Department to the new credit card software by the time the tax rush began, which meant that taxpayers were prevented from paying their property taxes on the county website, even though that option could have been fully operational if she had set it up sooner. Other allegations are exhaustively detailed in the six pages of the report, but essentially the investigator concluded that Plaintiff was difficult to work with, disrespectful and hostile to other employees, and actively making poor management decisions. Executive Summary Report 1-6 (dkt. #58-14).

Plaintiff may dispute the substance and the truthfulness of the allegations above, but she cannot dispute that she was provided with such allegations, in writing, prior to her hearing. Therefore, the Executive Summary was sufficient notice of the charges and the County's evidence against her, as to provide Plaintiff with due process.

**2. Plaintiff was given a hearing and a meaningful opportunity to respond.**

As discussed above, on May 21, Plaintiff was given a letter informing her that the Board was considering disciplining her "up to and including termination," and that she would be given

"an opportunity to present information, explanations, mitigating circumstances, or other relevant evidence related to this situation." Plaintiff was given a hearing on June 10, held in Executive Session. At the meeting, Plaintiff did not offer any written or oral response to May 21 letter or the Executive Summary report. Plaintiff concedes that she "concluded that she had no hope of retaining the Tax Collector position, and simply accepted its loss in reliance upon her ability to return to her old position." Plf. Resp. 33(Dkt. #64). Thus, even though she was given an opportunity to respond to the charges, she did not engage in the process given to her.

Plaintiff's argument that she relied on the Board's promise that she could return to her old position is not persuasive for purposes of due process. The May 21 notice informed her that she could be terminated, so it was not reasonable to believe she could only be demoted. She then offered no response to the charges brought against her.

Plaintiff now claims that the investigation into her conduct and her management of the Tax Department was biased and unfair and that her subordinate employees conspired with the investigator and other management personnel to build a case against her. The Court finds this possible, based on the evidence in the record. However, by not raising any objection to the investigation, the charges, the evidence, or any issues at all at the hearing, Plaintiff failed to engage the process. If a public employee could simply refuse to engage in the pre-termination process given to them, and later claim their civil rights had been violated, every single terminated public employee would have a due process cause of action against their employer. The Court declines to consider such an impractical outcome.

Even if Plaintiff believed the investigation was a sham, she had the opportunity to assert that claim at the hearing, and she chose not to do so. Plaintiff stated on the record that she had sought legal counsel, and on that advice she informed the Board that she would not contest the

evidence presented by the Executive Summary. It is unclear what more the Board could have done to give Plaintiff due process without Plaintiff herself being willing to engage in it.

### c.  Conclusion

It is unclear whether or not Plaintiff had a property interest in her employment with Klamath County. However, even if she did have a property interest, Plaintiff received notice of the charges and a meaningful opportunity to respond to those charges.    The Plaintiff received the process she was due, and the defendants' motion for summary judgment should be granted on this claim.

### II.    State law claims should be remanded to state court.

Plaintiff brings state law claims against the defendants for breach of contract, promissory estoppel, negligent misrepresentation, intentional interference with contractual relations, and claims for employment discrimination and whistleblowing under Oregon statute.

The court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). Once supplemental jurisdiction has been established under 28 U.S.C. § 1367(a), "a district court, in its discretion, may choose to consider pendant state claims even after the original basis for federal jurisdiction has disappeared. The court may also dismiss remaining state law claims." *E.g., Martin v. Rubel Enter.*, 19 F.3d 1440, 1440 (9th Cir.1994). Section 1367 specifically provides the district court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The Ninth Circuit has "often repeated, that 'in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir.1997) (citation omitted).

Having resolved all claims over which it had original jurisdiction, this court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Given that this case was removed to federal court, remand is appropriate.

## RECOMMENDATION

Defendants' motion for summary judgment should be GRANTED as to Plaintiff's claim under section 1983 for violation of her procedural due process rights under the Fourteenth Amendment. The motion is properly supported, and Plaintiff has failed to show a genuine issue of material fact such that the case should proceed to trial. Plaintiff's other claims, arising out of Oregon state law should be remanded back to state court based on this Court's inherent, discretionary power to exercise supplemental jurisdiction under section 1337.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of February, 2016.

_____
MARK D. CLARKE
United States Magistrate Judge